**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HYTTO PTE. LTD. (d/b/a "Lovense"), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| THE PARTNERSHIPS and UNINCORPORATED | ) | Jury Trial Demanded |
| ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff Hytto Pte. Ltd., doing business as "Lovense" ("Plaintiff" or "Lovense"), by and

through its undersigned counsel, hereby brings the present action against the Partnerships and

Unincorporated Associations identified on Schedule A attached hereto (collectively,

"Defendants") and alleges as follows.

## JURISDICTION AND VENUE

1.       This Court has original subject matter jurisdiction over the claims in this action

under the provisions of the Patent Act, 35 U.S.C. § 1, *et seq*., the Copyright Act 17 U.S.C. § 501,

*et seq*., and 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.       Venue is proper in this Court under 28 U.S.C. § 1391, and this Court may

properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive e-commerce stores and URLs operating under the seller aliases

identified in Schedule A attached hereto (the "Seller Aliases").[1] Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products featuring Plaintiff's patented designs and/or unauthorized copies of Plaintiff's federally registered copyrights for product images (collectively, the "Infringing Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. All of these activities and of such activities of the Defendants are within the United States as a whole, as well. *See* 735 ILCS §5/2-209; Fed. R. Civ. P. 4(k)(1) & 4(k)(2).

3.       Venue is also proper under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this district under Illinois law and, therefore, "reside" in the Northern District of Illinois according to federal law.

## **INTRODUCTION**

4.       This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale Infringing Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Infringing Products to unknowing consumers. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation.

---

[1] The Seller Aliases are listed on Schedule A, attached as **Exhibit 1** hereto. The version attached to this complaint is redacted. Plaintiff is moving contemporaneous with this Complaint for leave to file Schedule A under seal to avoid the Defendants learning of this case and consequently working to avoid service of the summons and complaint. The unredacted version of Schedule A will be filed contemporaneously under seal.

5.      E-commerce platforms used by Defendants fail to adequately subject new sellers to verification and confirmation of their identities, allowing Defendants to use false or inaccurate names and addresses when registering their e-commerce stores. Further, these e-commerce platforms continue to be unable or unwilling to prevent the rampant and flagrant listing of counterfeit products on their platforms.

6.      Plaintiff is forced to file this action to combat Defendants' infringement of its patented designs and registered copyrights for product images, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Plaintiff has been and continues to be irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented design and through infringement of its registered copyrights as a result of Defendants' actions and seeks injunctive and monetary relief.

## **THE PARTIES**

**Plaintiff**

7.      Plaintiff Hytto Pte. Ltd. is a Singaporean private limited company with its registered address at 152 Beach Road, #11-05 Gateway East, Singapore, 189721.

8.      Plaintiff is an award-winning designer and manufacturer of remote-controllable sex toys, including Lush series of vibrators (the "Lush Products"). Such control can be enacted through a mobile phone or smartwatch application in either proximity to or remote from the sex toy, such that the user, a significant other far from the user, or the audience of an erotic webcam performer can control the toy.







9.     Lovense has been recognized by prominent general media outlets such as Forbes, Newsweek, The New York Post, GQ, Vogue, CNET, INSIDER, TechCrunch, and Yahoo. It has also been recognized by media outlets in its industry, including by winning numerous awards:



10.    Lovense's innovative technology allows greater control of sex toys responsive to various stimuli. For example, that technology allows close-range control via Bluetooth, long-

distance control via Wi-Fi to Bluetooth, synchronizing the movement of the toy to music or making it responsive to various sounds, and tailoring vibration and other movement patterns to user preferences.



11.     As a result, Lovense's sales have grown rapidly through numerous channels, including general online retailers such as Amazon.com, specialty adult-oriented online retailers, and brick-and-mortar stores, both throughout the United States and specifically in Illinois. Thus, it is now a top brand within its industry. *See, e.g.*, "These Are the Best Sex Toy Brands on the Market," GQ, *available at* https://www.gq.com/story/best-sex-toy-brands.



12.     Among all the Lovense products, the Lush Products are the best seller, with an annual sale of over ten million dollars in the United States for each of the past four years. Tens of thousands of the Lush Products have been sold to Illinois, including this district, since 2017.

13.     The Lush Products include the original "Lush" and its upgraded versions, the "Lush 2" and the "Lush 3," as well as the related app, the Lovense Remote, that allows users to control the Lush Products from their smart phones, as well as connect with other users over the internet. Over the years, Lovense has worked on perfecting the Lush Products from the original design philosophy, which has made the product series very successful.

14.     The popularity of these products is further supported by the over one million downloads of the Lovense Remote on Google Play alone, as well as over 100 million search results on Google.com for the Lush Products.

15.     The popularity of these products is further supported by the over one million downloads of Lovense Remote on Google Play alone, as well as over 100 million search results on Google.com for Lovense's Lush Products.

16.     To protect its market position and reputation for innovative products made under arduous quality standards, Lovense holds numerous intellectual property rights. These include numerous design patents, copyrights, and trademarks.

17.     Before Defendants' acts described herein, Plaintiff and its predecessor-in-interest released the Lush Products using numerous patented designs.

18.     Plaintiff has used these patented designs for many years and has continuously sold products using these patented designs. The Lush Products are known for their distinctive patented designs. These designs are broadly recognized by consumers. Sex toys fashioned after

these designs are associated with the quality and innovation that the public has come to expect from the Lush Products.

19.     Plaintiff uses these designs in connection with its Lush Products, including, but not limited to, the following patented designs, herein referred to as the "Lush Designs" or "Patented Designs":

| Patent No. | Claim | Issue Date |
|---|---|---|
| D792,980 | FIG. 1<br>FIG. 2 | July 25, 2017 |



FIG. 3          FIG. 4

FIG. 5          FIG. 6



FIG. 7

FIG. 8

D948,069

April 5, 2022



## FIG. 1



FIG. 2

FIG. 3

FIG. 4



FIG. 5

FIG. 6

FIG. 7

20.     Plaintiff is the lawful assignee of all right, title, and interest in and to the Lush

Designs.

- U.S. Pat. No. D792,980 was lawfully issued on July 25, 2017, with named inventors Eddy Olivares and Dan Liu; and

- U.S. Pat. No. D948,069 was lawfully issued on April 5, 2022, with named inventor Dan Liu.

Attached hereto as **Exhibits 2 and 3** are true and correct copies of the abovementioned Lush Designs. Attached hereto as **Exhibits 4 and 5** are true and correct copies of assignment records from the United States Patent and Trademark Office showing Plaintiff as the current owner and assignee of the Lush Designs.

21. Plaintiff has registered its copyrights for images of the Lush Products (the "Lush Copyrighted Images") with the United States Copyright Office. The registrations include, but are not limited to:

| Title | Registration No. | Date of Registration |
|---|---|---|
| Lush 2-Bluetooth remote control vibrator | VA 2-330-356 | October 28, 2022 |
| Lush 3 Bluetooth Remote Control Vibrator Technical Drawings | VA 2-286-349 | December 23, 2021 |

True and correct copies of the records from the U.S. Copyright Office website for the above-referenced Lush Copyrighted Images are attached hereto as **Exhibits 6 and 7**, which also show Plaintiff as the current owner and assignee of the Lush Copyrighted Images.

22. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Lush Copyrighted Images to the public.

23. Since first publication, the Lush Copyrighted Images have been used on and/or in conjunction with the Lush Products and are featured on Lovense' website at https://www.lovense.com/. The Lush Products featuring the Lush Copyrighted Images are advertised on Lovense' website at https://www.lovense.com/.

**The Defendants**

24.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued under Federal Rule of Civil Procedure 17(b).

25.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

26.     In recent years, Plaintiff has identified numerous fully interactive, e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Infringing Products to consumers in this judicial district and throughout the United States. According to U.S. Customs and Border Protection, most infringing products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 8**). The bulk of infringing products sent to the United States

"come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights ("IPR") violations. *Id.* Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id.* Legislation was previously introduced in the U.S. Senate that would have allowed CBP to seize articles that infringe design patents, thus closing a loophole exploited by infringers.[2] However, no such law has been enacted. Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id.*

27. Third-party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 9**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods," prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 10**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a infringer to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. **Exhibit 9** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can

---

[2] *See* Press Release, U.S. Senator Thom Tillis, *Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses* (Dec. 5, 2019), https://www.tillis.senate.gov/2019/12/tillis-coons-cassidy-hirono-introduce-bipartisan-legislation- to-seize-counterfeit-products-and-protect-american-consumers-and-businesses.

appear unrelated even though they are commonly owned and operated. **Exhibit 10** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and infringers." **Exhibit 9** at 186–87.

28.    Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Infringing Products to residents of Illinois.

29.    Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use the Lush Designs or Lush Copyrighted Images and none of the Defendants are authorized retailers of genuine Lush Products.

30.    E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

31.    E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias

registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

32.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Infringing Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated.

33.     Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

34.    Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the Lush Designs and/or the Lush Copyrighted Images. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Infringing Products into the United States and Illinois over the Internet.

35.    Defendants' infringement of the Lush Designs in connection with making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was willful.

36.    Defendants' infringement of the Lush Copyrighted Images, including copying, displaying, distributing, reproducing, and/or making derivative works incorporating those images, was willful.

37.    Defendants' infringement of the Lush Designs in connection with making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products, including the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products into Illinois, is irreparably harming Plaintiff.

38.    Defendants' infringement of the Lush Designs in connection with the Lush Copyrighted Images, including copying, displaying, distributing, reproducing, and/or making derivative works incorporating those images, is irreparably harming Plaintiff.

19

## COUNT 1

**INFRINGEMENT OF UNITED STATES DESIGN PATENT NO. D792,980**
**(35 U.S.C. § 271)**

39.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

40.     Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe directly and/or indirectly the ornamental design claimed in U.S. Pat. No. D792,980.

41.     Defendants have infringed U.S. Pat. No. D792,980 through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

42.     Plaintiff is entitled to recover damages adequate to compensate for the infringement, including Defendants' profits under 35 U.S.C. § 289. Plaintiff is entitled to recover any other damages as appropriate under 35 U.S.C. § 284.

## COUNT 2

**INFRINGEMENT OF UNITED STATES DESIGN PATENT NO. D948,069**
**(35 U.S.C. § 271)**

43.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

44.     Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe directly and/or indirectly the ornamental design claimed in U.S. Pat. No. D948,069.

45.     Defendants have infringed U.S. Pat. No. D948,069 through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

46.     Plaintiff is entitled to recover damages adequate to compensate for the infringement, including Defendants' profits under 35 U.S.C. § 289. Plaintiff is entitled to recover any other damages as appropriate under 35 U.S.C. § 284.

## COUNT III

### COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)

47.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

48.     The Lush Copyrighted Images constitute original works and copyrightable subject matter under the Copyright Act, 17 U.S.C. §§ 101, et seq.

49.     Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for the Lush Copyrighted Images. The Lush Copyrighted Images are protected by the relevant U.S. Copyright Registrations, which were duly issued by the United States Copyright Office. At all relevant times, Plaintiff and its predecessor-in-interest have been and still are the owner of all rights, title, and interest in the Lush Copyrighted Images, which have never been assigned, licensed, or otherwise transferred to Defendants.

50.     The Lush Copyrighted Images are published on the internet and available to Defendants online. As such, Defendants had access to the Lush Copyrighted Images via the internet.

51.     Without authorization from Plaintiff, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating the Lush Copyrighted Images on e-commerce stores operating under the Seller Aliases and the corresponding Infringing Products in the manner described in **Schedule A**. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Lush Copyrighted Images. Such conduct infringes and continues to infringe the Lush Copyrighted Images in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

52.     Defendants reap the benefits of the unauthorized copying and distribution of the Lush Copyrighted Images in the form of revenue and other profits that are driven by the sale of Infringing Products.

53.     Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Infringing Products that capture the total concept and feel of the Lush Copyrighted Images.

54.     On information and belief, Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to Plaintiff's rights.

55.     Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

56.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Under 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Lush Copyrighted Images.

**PRAYER FOR RELIEF**

Plaintiff respectfully asks the Court to grant the following relief:

A.  That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff and that include any reproduction, copy or colorable imitation of the design claimed in the Lush Designs;

    b.  aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Lush Designs;

    c.  copying, reproducing, distributing copies of, making derivative works of, or publicly displaying the Lush Copyrighted Images in any manner without the express authorization of Plaintiff;

    d.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Lush Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Lush Copyrighted Images;

    e.  further infringing the Lush Copyrighted Images and damaging Plaintiff's goodwill;

    f.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by

Plaintiff to be sold or offered for sale, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Lush Copyrighted Images; and

g. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (f).

B. Entry of an Order that, upon Plaintiff' request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, DHgate, Shein, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods that infringe the Patented Designs and/or the Lush Copyrighted Images;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of infringing goods using the Patented Designs and/or the Lush Copyrighted Images; and

c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

C. Judgment that Plaintiff's asserted patent(s) are valid and enforceable;

D. Judgment that Defendants have infringed and are infringing the Patented Design(s);

E. Judgement that Defendants have infringed and are infringing the Lush Copyrighted Image(s);

F. That Plaintiff be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiff for Defendants' infringement of the Lush Designs, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, under 35 U.S.C. § 284;

G. In the alternative, that Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of the Lush Designs, under 35 U.S.C. § 289;

H. That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of the Lush Designs be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

I. That Plaintiff be awarded its reasonable attorneys' fees and costs;

J. As a direct and proximate result of Defendants' infringement of the Lush Copyrighted Images, Plaintiff is entitled to damages as well as Defendants' profits, under 17 U.S.C. § 504(b);

K. Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed under 17 U.S.C. § 504(c), or for any other such amount as may be proper under 17 U.S.C. § 504(c);

L. Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action under 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

M. Any and all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.


Dated: October 26, 2023

*/s/ Stephen J. Rosenfeld*

Stephen J. Rosenfeld
Nicholas A. Kurk
Jacob D. Radecki
MCDONALD HOPKINS LLC
300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone:     (312) 280-0111
srosenfeld@mcdonaldhopkins.com
nkurk@mcdonaldhopkins.com
jradecki@mcdonaldhopkins.com

Kris Y. Teng (*pro hac vice* forthcoming)
Zhe "Philip" Wang (*pro hac vice* forthcoming)
Gang "Gavin" Ye (*pro hac vice* forthcoming)
BAYES PLLC
8260 Greensboro Drive, Suite 625
McLean, VA 22102
Phone:     (703) 995-9887
Fax:         (703) 821-8128
kris.teng@bayes.law
philip.wang@bayes.law
gavin.ye@bayes.law

*ATTORNEYS FOR PLAINTIFF*
*HYTTO PTE. LTD. (D/B/A "LOVENSE")*